GASTER *v.* DERMOTT SCHOOL DISTRICT.

Opinion delivered November 2, 1931.

*John Baxter*, for appellant.

*Wallace Townsend*, for appellee.

SMITH, J. This suit was brought by appellant, a citizen and taxpayer in the Dermott Special School District, to enjoin the directors of that district from selling any additional bonds of the district.

The complaint contains the following allegations. The assessed valuation of all taxable property, both real and personal, within the district is $1,476,163, and on August 1, 1931, the indebtedness of the school district amounted to $194,410.54, consisting of the following items:

Floating indebtedness (including unpaid
    warrants) ...............................................................$ 43,813.88

| | |
|---|---:|
| Bonds not matured | 119,500.00 |
| Contracts to be executed prior to July 1, 1932 | 18,924.01 |
| Accounts payable | 10,100.00 |
| Other liabilities | 1,150.95 |
| Improvement taxes due | 921.70 |
| Total | $194,410.54 |

The floating indebtedness consists of the promissory notes of the district secured by unpaid warrants thereof, attached thereto, drawn by the district. These notes are twenty in number and bear various dates from 7-1-30 to 6-3-31.

On August 8, 1931, the directors of the school district filed with the Commissioner of Education of the State of Arkansas a petition for the authorization and approval of a proposed bond issue of $47,000, which petition conformed to the requirements of § 62 of act No. 169 of the Acts of the General Assembly for the year 1931, and the Commissioner of Education gave his approval to the proposed issue in writing, under the seal of the State Board of Education, authorizing the directors, on behalf of the district, to advertise and sell a bond issue of $47,000.

It was further alleged that the proposed bond issue, together with the bonds of the district now outstanding, will be very greatly in excess of seven per cent. of the assessed valuation of the property of the district, and that the proposed new issue of $47,000 in bonds will not be for the purpose of refunding the present existing bonded indebtedness, and for that reason the proposed issue is prohibited by § 60 of said act 169.

A demurrer was filed by the directors on behalf of the district, which was sustained by the court, and, as the plaintiff taxpayer refused to plead further, the complaint was dismissed as being without equity, and this appeal is from that decree.

The question presented by this appeal is that of the authority of the Dermott Special School District to

issue additional bonds under the authority of act 169 of the Acts of 1931 (Acts 1931, page 476). This is an act entitled "An act to provide for the organization and administration of the public common schools." The act consists of 198 sections, and is a complete revision of our school laws.

The provisions of this act which are decisive of this appeal are §§ 59 and 60, and they read as follows:

"Section 59. All school districts are authorized to borrow money and issue negotiable coupons for the repayment thereof from school funds, for the building and equipment of school buildings, making additions and repairs thereto, purchasing sites therefor, and for funding any indebtedness created for any purpose and outstanding at the time of the passage of this act, as provided in this act.

"Section 60. No bonds shall be issued at any time that would make the total of outstanding bonded indebtedness of the district at that time, exclusive of interest, exceed seven per cent. of the assessed valuation of the real and personal property in the district as shown by the last county assessment. This shall not prohibit bond issues refunding present bonded indebtedness that exceeds seven per cent."

Read by itself, the provisions of § 59 are very broad. This section authorizes all school districts to borrow money and issue negotiable bonds for building and equipping school buildings, making repairs and additions thereto, and purchasing sites therefor, "and for funding any indebtedness created for any purpose and outstanding at the time of the passage of this act, as provided in this act."

This section deals with the purposes for which bonds may be issued and authorizes their issuance, among other purposes, "for funding any indebtedness created for any purpose."

The following section, No. 60, imposes a limitation as to the amount of bonds which may be issued. Under this section bonds may not be issued that would make

the total of outstanding bonded indebtedness (exclusive of interest) exceed seven per cent. of the assessed value of the property in the district. But this limitation does not "prohibit bond issues refunding present bonded indebtedness that exceeds seven per cent."

In other words, school districts may refund their entire bonded indebtedness by issuing new bonds, although the indebtedness exceeds seven per cent. of the assessed valuation of the property in the district, but, except for this purpose, bonds may not be issued in excess of that per cent. of the assessed valuation.

It would appear, therefore, that the Dermott Special School District is without power to issue additional bonds which the plaintiff taxpayer seeks to enjoin, for the reason that the district has already issued bonds in excess of seven per cent. of the assessed value of the property in this district, and is therefore without power to issue new or additional bonds except to refund the present bonded indebtedness, and the complaint alleges that this is not the purpose to which the proceeds of the new bond issue will be devoted.

It is insisted, however, that the floating indebtedness of the district, for which the warrants of the district have been issued in payment of the notes of the district are included in the term "bonded indebtedness," appearing in § 60 of the said Act 169. The case of *Arkansas State Highway Commission* v. *Kerby*, 175 Ark. 652, 300 S. W. 377, is cited to sustain this contention; but we do not think it is sustained by that case.

In the case cited Kerby sought to compel the State Highway Department to take over and pay certain certificates of indebtedness issued by a road improvement district prior to the passage of act No. 11 of the Acts of 1927.

As appears from the opinion in that case, § 3 of act No. 11 provided that the Highway Commission should "ascertain the amount of the outstanding valid bonds issued by road improvement districts in this State, * * * 'and that, after obtaining this information, the High-

way Commission, beginning with the year 1927, should allot to each road district in the State now having outstanding bond issues an amount equal to its bonds maturing during the year.' ''

Payment to Kerby was refused by the Highway Commission, because the indebtedness of the road improvement district in question was evidenced by certificates of indebtedness, and not by bonds. The opinion reviewed the history of this legislation and declared its purpose, and the fact was stated that the road district which had issued the certificates of indebtedness held by Kerby had been taken over by the Highway Department and made a part of the State highway system. It was there said: ''The evident and avowed purpose of the act under consideration was to aid road districts, which had become overburdened with debt, in the construction of the improved roads, and we are of the opinion that the word 'bond' as used in the act was meant to include promissory notes and certificates of indebtedness issued by the district for the purpose of constructing the improved roads; and that the words 'bond,' 'note,' or 'certificate of indebtedness' are but convertible terms. In short, we are of the opinion that the expression, 'bond,' as used in the act under consideration, was intended to cover all written obligations for the payment of money legally issued by the commissioners for the purpose of constructing the improved roads under the original acts creating the road districts.''

The judgment of the circuit court, directing the Highway Commission to pay the certificates held by Kerby, was therefore affirmed, but this order was affirmed because the Arkansas State Highway Commission had taken over the roads of the improvement district which had issued the certificates of indebtedness, and, having done this, it was held that, under the terms of the act under which the roads had been taken over and made a part of the State highway system, it became the duty of the Commisson to pay all of said certificates of indebtedness involved in that case. It was therefore

declared immaterial whether this indebtedness was evidenced by promissory notes, certificates of indebtedness, or negotiable bonds, and that these would be treated as convertible terms, inasmuch as the General Assembly had assumed the payment of the district's obligations.

Section 60 of act 169 consists of two complete sentences. In the first sentence it is provided that no bonds shall be issued at any time that would make the outstanding bonded indebtedness of the district (exclusive of interest) exceed seven per cent. of the assessed value of the property of the district. The second sentence of § 60 is in the nature of a proviso to the first sentence, that is, that this seven per cent. limitation shall not prohibit bond issues refunding present bonded indebtedness. This second sentence declares the purposes for which the seven per cent. limitation may be exceeded, that is, to pay, not the present indebtedness, but the present "bonded" indebtedness. We cannot read the word "bonded," here appearing, out of the statute or treat it as being without significance. Section 59 authorizes the issuance of bonds "for funding *any* indebtedness created for any purpose and outstanding at the time of the passage of this act," whereas, in § 60 the adjective "any," preceding the word "indebtedness," is displaced, and the adjective "bonded" is substituted. We cannot assume that the Legislature had no purpose in this substitution. On the contrary, the purpose of the Legislature, in the enactment of § 59, was to authorize the issuance of bonds to pay any indebtedness, subject to the limitations appearing in § 60, which are to the effect that bonds may not be issued in excess of seven per cent. of the assessed value of the property of the district except for the purpose of refunding the present bonded indebtedness of the district.

Here, under the allegations of the complaint, the school district has outstanding thousands of dollars of warrants, issued for teachers' salaries and other current expenses, attached to notes given for this borrowed money, and, while this is indebtedness of the district, it

is not bonded indebtedness, and there is therefore no authority to issue bonds to cover those debts, for the reason that the district has now outstanding bonds in excess of seven per cent. of the assessed value of the property of the district.

The decree of the court below will therefore be reversed, and the cause remanded, with directions to overrule the demurrer to the complaint.